IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CESSNA FINANCE CORPORATION,

                Plaintiff

vs.                                             Case No. 13-1311-SAC

VYWB, LLC and PARMJIT S. PARMAR,

                Defendants.

MEMORANDUM AND ORDER

        The plaintiff Cessna Finance Corporation ("CFC") financed the defendant VYWB, LLC's ("VYWB's") purchase of two jets for the total amount of $13,032,500.00 ($6,516,250 per jet). Promissory notes and security agreements on each jet were executed which gave CFC security interests, and the defendant Parmjit S. Parmar ("Parmar") also executed guaranty agreements that unconditionally guaranteed VYWB's obligations to CFC. VYWB defaulted when it stopped making payments in December 2008 and after. CFC repossessed the jets in late January of 2009. CFC sold the jets in 2010 and brought this action to recover the deficiencies due under the notes and agreements. The defendants answered the complaint raising several defenses to their liability for these deficiencies. In response to the plaintiff's interrogatories, the defendant withdrew all, or nearly all, of their defenses.

        The plaintiff now moves for summary judgment arguing that the defendants' withdrawal of defenses silences any factual disputes and entitles

the plaintiff to judgment as a matter of law on its breach of contract claims. On the joint motion of the parties, the magistrate judge suspended the final pretrial conference pending this ruling on the plaintiff's summary judgment motion. (Dk. 39). Thus, the court's ruling here is without the benefit of a pretrial order.

Rule 56 authorizes a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it would affect the outcome of a claim or defense under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he dispute about a material fact is "genuine, . . ., if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. at 251-52. The summary judgment movant bears the initial burden of pointing out those portions of the record that show it entitled to judgment as a matter of law. *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992), *cert. denied*, 506 U.S. 1013 (1992). If the movant meets that burden, the non-movant must come forward with specific facts based on admissible evidence

from which a rational fact finder could find in the non-movant's favor. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

CFC's memorandum includes 42 paragraphs of material facts, and the court finds that the defendants have effectively controverted only one of them, the amount of reasonable attorney's fees incurred in this case. In sum, paragraphs 1-39 and 41-42 are uncontroverted. The defendants' do not create a material issue of fact from referencing multiple times their contractual liability for only those attorney's fees that are reasonable. The plaintiff's statement of facts includes the express contract terms that allow only "reasonable attorneys' fees," and there is no factual or legal dispute between the parties on this general liability. (Dk. 33, p. 8, ¶ 30). As to whether the plaintiff has come forward with sufficient proof of the reasonableness of the attorneys' fees, this is a matter addressed below.

The defendants also have not effectively controverted the plaintiff's statement, "CFC performed the inspections, maintenance and repairs on the Aircraft that CFC believed were reasonable and necessary to prepare the Aircraft for sale." *Id.* at p. 7, ¶ 20. The defendants have not submitted any arguments or evidence supporting a factual dispute over whether these "reasonable and necessary" inspections, maintenance and repairs are inconsistent with the plaintiff's duty to mitigate. (Dk. 46, p.3). CFC's paragraph 39 also is not controverted by the defendants' citation of their answer to the amended complaint. This paragraph accurately

3

summarizes the plaintiff's interrogatory and the defendants' answers thereto. The defendants' effort to preserve a failure to mitigate defense will be addressed below. Following its precedent on fee issues, the court agrees that the CFC's record is insufficient to sustain ¶ 42.

The court adopts by reference the uncontroverted facts appearing in the plaintiff's memorandum. The following is a summary of those uncontroverted facts for the benefit of providing a context to this order and its rationale.

1. In this action, the plaintiff CFC is the lender and secured party, the defendant VYWB is the debtor, and the defendant Parmar is the guarantor. On February 29, 2008, CFC provided financing for VYWB's purchase of two Hawker Jets, and VYWB executed two promissory notes promising to repay $6,516,250.00 plus interest on each. VYWB also executed addendums setting out the repayment terms and security agreements granting CFC a security interest in the jets. Parmar unconditionally guaranteed VYWB's obligations under the notes and security agreements by executing a separate guaranty for each jet. In pertinent part, the guaranties provided:

> [Parmar] understands and agrees that [his] liability under this Guaranty is unlimited [and] . . . nothing but full payment in cash to [CFC] of [VYWB's] Indebtedness, and the full and timely performance of all of [VYWB]'s other obligations under the [Notes and Security Agreements], shall reduce or release [Parmar] from [his] obligations and liabilities under this Guaranty.

(Dk. 33, p. 5, ¶ 11).

2. By failing to make the payments due on December 1, 2008, and all subsequent payments when due under the notes, VYWB defaulted on the notes and security agreements. When the defaults were not cured after the proper notices, CFC repossessed the jets on January 21, 2009, and January 30, 2009.

3. As of repossession, the debt securing the first jet, N525LR, was $6,273,962.27, and the debt on the second jet, N501LR was $6,282,584.81. CFC sent defendants the notice of repossession, outstanding deficiencies, right to redeem, right to an accounting, and intended disposition by private sale after February 20, 2009. The defendants are not asserting that CFC failed to comply with the UCC in its repossession of the aircraft.

4. In its judgment of what was reasonable and necessary to prepare the jets for sale, CFC performed inspections, maintenance and repairs on the jets. It advertised the sale of the jets, and hired an aircraft sales broker. On March 23, 2010, CFC sold the N525LR jet for $3,200,000.00. The defendants are not asserting that this was a commercially unreasonable sale. On July 1, 2010, CFC sold the N501LR jet for $2,725,000.00, and defendants also do not challenge this sale as commercially unreasonable. By letters dated July 2 and 3, 2010, CFC notified defendants of the disposition of the aircraft and of the outstanding deficiencies. The defendants do not assert that CFC failed to comply with any UCC provisions in its disposition of the jets.

5. The notes and security agreements obligate VYWB to reimburse CFC for any expenses, including reasonable attorneys' fees, incurred to collect a deficiency or to enforce CFC's rights under the notes, security agreements, and guaranties. The guaranties also provide that Parmar will reimburse CFC for expenses and reasonable attorneys' fees incurred to collect on these agreements.

6. From the gross sale price of the N525LR jet, the plaintiff deducted the repossession and disposition expenses ($327,791.61) and accrued interest from repossession date to sale date ($408,133.56) and applied the remaining sale proceeds to amounts owed on the note resulting in the total amount, $4,547,427.84, due and owing as of June 20, 2014, with interest accruing at the rate of 5.65% for a per diem rate of $475.83 from and after June 20, 2014, until full payment is made.  From the gross sale price of the F501LR jet, the plaintiff deducted the repossession and disposition expenses ($351,568.91) and accrued interest from repossession date to sale date ($509,276.02) and applied the remaining sale proceeds to amounts owed on the note resulting in the total amount, $5,216,936.96, due and owing as of June 20, 2014, with interest accruing at the rate of 5.65% for a per diem rate of $550.69 from and after June 20, 2014, until full payment is made.

7. Relying solely on the affidavit of Robert Hotaling, Jr., CFC's chief credit officer, the plaintiff submits that it has incurred attorneys' fees and expenses in the amount of $66,558.33 through June 17, 2014, and that it

will incur future attorneys' fees and expenses. Based on his "experience and involvement in such cases," Mr. Hotaling avers this total amount of fees and expenses is "fair and reasonable." (Dk. 33, p. 23). The defendants contest whether this averment suffices as proof for "reasonable" attorney fees'.

8. CFC's demand for payment of these amounts due has been refused by VYWB and Parmar. The defendants point out that this particular demanded amount of attorneys' fees was not made prior to the plaintiffs' summary judgment motion.

As the uncontroverted facts stated above show, the plaintiff is entitled to summary judgment on liability and damages, but the court will insist on additional proof to establish the amount of reasonable attorneys' fees. The plaintiff's motion of summary judgment is not defeated by the defendants' belief that they have preserved an affirmative defense of failure to mitigate damages or overstatement of losses related to maintenance and repairs on the jets.[1] As for evidence, the defendants offer nothing and simply allege the blanket position they "dispute[s] the reasonableness of the . . . [amounts] claimed for maintenance and repair expenses." (Dk. 46, p. 7).

The defendants say they have "not withdrawn the affirmative defense that Plaintiff has overstated and failed to mitigate its alleged

---

[1] The preservation of an affirmative defense is an issue typically resolved during the preparation of a pretrial order, but the parties persuaded the magistrate judge to suspend this important step here.

7

damages," and they rely on ¶ 23 of their answer to the amended complaint. (Dk. 10, p. 8). The defendants' answers to the plaintiff's interrogatories No. 6 and No. 9 establish, however, that they did withdraw the affirmative defenses "that Plaintiff failed to act in a commercially reasonable manner to minimize its costs and expenses" and "that Plaintiff's demand for damages is overstated." (Dk. 33, pp. 83, 84). While the interrogatories do not refer to ¶ 23 of their answer, the defendants fail to show how their answers quoted above would not encompass their repetitious affirmative defenses of overstated damages and failure to mitigate summarized in ¶ 23. It is true that "failure to mitigate" only appears in ¶ 23, but the defendants have not alleged any facts or come forward with any evidence showing that ¶ 23 was intended to address factually or legally distinct circumstances or arguments. As CFC points out, "[i]t is difficult to conceive how CFC could have acted in a commercially reasonable manner to minimize its costs and expenses and not overstate its damages, but still be found to have failed to mitigate those damages." (Dk. 47, p. 8).

Moreover, the defendants have not come forward with properly supported statements of fact to controvert the plaintiff's statement it "performed the inspections, maintenance and repairs on the Aircraft that CFC believed were reasonable and necessary to prepare the Aircraft for sale." (Dk. 33, ¶ 20, p. 7). The defendant does not controvert the plaintiff's opinion evidence on this point. It is not enough for the defendants to stand

on the mere assertion that they have this defense and on the naked allegation that they dispute the reasonableness of these expenses. Summary judgment motions are intended to address situations like this when the evidence fails to present a sufficient disagreement for trial. Thus, whether the defendants have preserved these affirmative defenses or not, the court finds the defendants have not carried their summary judgment burden on this affirmative defense of showing a genuine issue of material fact. The court grants the plaintiff's motion for summary judgment on the defendants' affirmative defenses.

The defendants' second argument is that the plaintiff has not fulfilled its burden of showing the reasonableness of its requested attorneys' fees. The defendants cite this court's recent decision in *TST Truck Insurance Ltd. v. First National Bank of Wamego*, 2014 WL 1047993 (D. Kan. Mar. 18, 2014), which addressed the standard and burden of proof governing contractual attorneys' fees. Following federal and state court precedent, the court specifically held that the burden is on the movant "seeking the fees to show their entitlement to such an award" and "to justify the reasonableness of the fees" requested. *Id.* at *13. The decision discusses the need for sufficient proof by affidavits or documentation. *Id.* at *14-*15. The affidavit offered by the plaintiff here is wholly insufficient for the court to conclude that the fees requested here are justified as reasonable. In short, the moving plaintiff has not carried its initial burden of providing and citing those

9

portions of the record that show it is entitled to judgment as a matter of law on the reasonableness of its fees request. The court will deny a summary judgment finding at this time on the amount of attorneys' fees and directs the plaintiff to provide its motion with sufficient detailed affidavits and documentation to sustain a finding of reasonableness on attorneys' fees to date. From the filing date of the plaintiff's motion for fees, the defendants will have 14 days to file their response. The court will rule promptly on the reasonableness of the fees requested.

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment (Dk. 32) is granted on <u>count one</u> in the amount of $4,547,427.84, with interest accruing at the rate of 5.65% for a per diem rate of $475.83 from and after June 20, 2014, until full payment is made, and on <u>count two</u> in the amount of $5,216,936.96, with interest accruing at the rate of 5.65% for a per diem rate of $550.69 from and after June 20, 2014, until full payment is made;

IT IS FURTHER ORDERED that the plaintiff is entitled to recover reasonable attorneys' fees and expenses but a summary judgment finding on the reasonableness of the requested amount of attorneys' fees will be addressed promptly after additional briefing and supplementation with the proper and necessary affidavits and documentation.

Dated this 20th day of October, 2014, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge